**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

THE ORANGE RABBIT, INC. and                    Case No. 19-cv-687 (MJD/ECW)
NICHOLAS GIACOPELLI,

              Plaintiffs,

     v.                                                      **ORDER**

FRANCHOICE, INC. and
RAY FANNING,

              Defendants.

This matter is before the Court on Plaintiffs' Motion to Amend Complaint (Dkt. 40) ("Motion"). For the reasons stated below, the Motion is granted in part and denied in part.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The "Facts" section of the proposed second amended complaint is exactly the same as found in Amended Complaint. (*Compare* Dkt. 42-2 ¶¶ 11-23, *with* Dkt. 14 ¶¶ 11-23.) For the sake of brevity, the Court incorporates the "Facts" section found in its Report and Recommendation into this Order. (Dkt. 55.) The proposed second amended complaint also contains the same claim for fraud as found in the Amended Complaint. (*Compare* Dkt. 42-2 ¶¶ 31-32, *with* Dkt. 14 ¶¶ 31-32.) Defendants did not move to dismiss the common law fraud claim as part of their Motion to Dismiss. The claim alleged that Defendants committed fraud by knowingly making false representations to Plaintiffs for the purpose of inducing them to purchase an ILKB franchise. (Dkt. 42-2 ¶

31.)  In addition, the fraud claim alleges that these representations proved to be untrue; Plaintiffs reasonably relied on this information in deciding to purchase an ILKB franchise, and as a result Plaintiffs have suffered damages of no less than $500,000.  (*Id.* ¶ 32.)

The only substantive addition to the proposed second amended complaint is Count V seeking punitive damages.  This proposed count incorporates the allegations in the preceding paragraphs and then alleges as follows:

Defendants deliberately and intentionally disregarded the rights of Plaintiffs and disregarded the substantial likelihood of serious injury and damages to Plaintiffs by representing that they offered to match Plaintiffs only with franchises that Defendants had investigated and vetted; that such franchises were of high quality; and that Defendants would provide Plaintiffs with all knowledge necessary to make an informed decisions [sic], when, in fact:

- Defendants knew that the founder of ILKB, Michael Parrella, had filed for bankruptcy in 2003 and that his discharge had been vacated in 2008; and knew or should have known, in the exercise of reasonable inquiry of Parrella's bankruptcy consistent with their representations to Plaintiffs, that Parrella's discharge had been revoked for failure to pay federal taxes and that there were two adversary proceedings in the bankruptcy accusing Parrella of fraud and fraudulent transfers.

- Defendants failed to perform any serious, systematic or professional due diligence upon ILKB; instead all they did was talk to a few existing

2

franchisees, many of whom did not own the type of ILKB franchise that Plaintiffs were considering buying, and Defendants prepared no report, summary or investigation of ILKB.

- Defendants simply took representations of ILKB about the nature of the franchise, including the representations that it was suitable for absentee ownership; that no units had closed; that average ILKB franchisees made revenues and profits at a certain level; and that ILKB did all of the marketing for franchisees, and passed them on to Plaintiffs without checking on them.

- Defendants knew that ILKB engaged in blatantly illegal marketing techniques as early as March 2015 and never questioned whether such techniques had ceased, thus exposing Plaintiffs to the high likelihood, if not certainty, that Plaintiffs would be the victims of fraud.

- Defendants disregarded complaints and warning signs from ILKB franchisees as the whining of "stupid, selfish and ungrateful franchisees" instead of investigating such complaints and determining whether they were true.

- Defendants made specific representations as set forth in the proposed second amended complaint about ILKB without investigating or verifying them, when such representations were false and were known or should have been known to Defendants as false.

(*Id.* ¶ 42.)

According to the proposed second amended complaint, as a result of Defendants' deliberate disregard of Plaintiffs' rights, Plaintiffs are entitled to punitive damages. (*Id.*)

## II.   LEGAL STANDARD

The Court held oral argument during which it sua sponte raised the issue of the appropriate standard for adding punitive damages claims. Both parties had initially addressed in their written submissions the appropriateness of amending the Amended Complaint to add a claim for punitive damages under Minnesota Statutes Sections 549.191 and 549.20. The Court ordered the parties to file supplemental pleadings with respect to their positions regarding whether Minn. Stat. § 549.191, or Rule 15 of the Federal Rules of Civil Procedure, applies to a motion to amend to add a claim for punitive damages. Both parties filed supplemental briefs and agree, based on recent decisions within this District, that Rule 15, and not Minn. Stat. § 549 applies to the present motion to amend. That said, the parties disagree about whether the proposed second amended complaint plausibly sets forth a claim for punitive damages under Minn. Stat. § 549.20.

Rule 15(a) sets the general standard for amending pleadings in Federal court. Fed. R. Civ. P. 15. Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." The determination as to whether to grant leave to amend is entrusted to the sound discretion of the trial court. *See, e.g.*, *Niagara of Wisc. Paper Corp. v. Paper Indus. Union Mgmt. Pension Fund*, 800 F.2d 742, 749 (8th Cir. 1986) (citation omitted). The Eighth Circuit has held that although amendment of a pleading "should be allowed liberally to ensure that a case is decided on its merits . . . there is no absolute

right to amend." *Ferguson v. Cape Girardeau Cty.*, 88 F.3d 647, 650-51 (8th Cir. 1996) (citing *Thompson-El v. Jones*, 876 F.2d 66, 67 (8th Cir. 1989); *Chesnut v. St. Louis Cty.*, 656 F.2d 343, 349 (8th Cir. 1981)).

Denial of leave to amend may be justified by "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Hillesheim v. Myron's Cards and Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (citation omitted) ("A district court's denial of leave to amend a complaint may be justified if the amendment would be futile."). "Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, in reviewing a denial of leave to amend we ask whether the proposed amended complaint states a cause of action under the *Twombly* pleading standard . . . ." *Zutz v. Nelson*, 601 F.3d 842, 850-51 (8th Cir. 2010) (citation and marks omitted); *see also In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007) ("[W]hen a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion.").

On a motion to dismiss filed pursuant to Rule 12(b)(6), the Court must take the well-pleaded allegations of a claim as true, and construe the pleading, and all reasonable inferences arising therefrom, most favorably to the pleader. *See Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). To survive a motion to dismiss, a claim "must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Minn. Stat. § 549.191 prohibits a party from pleading a claim for punitive damages at the commencement of a lawsuit.  The statute then provides a mechanism for amending the complaint:

> Upon commencement of a civil action, the complaint must not seek punitive damages.  After filing the suit a party may make a motion to amend the pleadings to claim punitive damages.  The motion must allege the applicable legal basis under section 549.20 or other law for awarding punitive damages in the action and must be accompanied by one or more affidavits showing the factual basis for the claim.  At the hearing on the motion, if the court finds prima facie evidence in support of the motion, the court shall grant the moving party permission to amend the pleadings to claim punitive damages.

Minn. Stat. § 549.191.

The relevant legal basis for punitive damages under Minnesota law provides:

> Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others.
>
> > (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:
> >
> > > (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or

> (2) deliberately proceeds to act with indifference
> to the high probability of injury to the rights or
> safety of others.

Minn. Stat. § 549.20, subd. 1.

Courts in the District of Minnesota have historically applied the state statute, Minn. Stat. § 549.191, rather than Rule 15, to motions to amend to add a claim for punitive damages, in diversity actions, such as the present action. *See, e.g.*, *Ulrich v. City of Crosby*, 848 F. Supp. 861, 866-69 (D. Minn. 1994) (addressing the standards applicable to a motion to amend under Minn. Stat. § 549.191). However, this practice has come under scrutiny over the last couple years in light of the apparent conflict between the Minnesota statute and Rule 15. *See, e.g.*, *In re Bair Hugger Forced Air Warming Devices Products Liab. Litig.*, MDL No. 15-2666 (JNE/FLN), 2017 WL 5187832 (D. Minn. July 27, 2017).

Indeed, courts have recently taken another look at the practice and analyzed whether Rule 15 or Minn. Stat. § 549.191 should be applied in view of the 2010 United States Supreme Court's decision in *Shady Grove Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). The large majority of these courts now apply Rule 15 instead of Minn. Stat. § 549.191 when considering motions to add punitive damage claims. *See*, *e.g.*, *Mgmt. Registry, Inc. v. A.W. Companies, Inc.*, No. 017CV05009 (JRT/KMM), 2019 WL 7838280, at *14 (D. Minn. Sept. 12, 2019), *R.&R. adopted in part sub nom.*, 2020 WL 487315 (D. Minn. Jan. 30, 2020); *Barry v. Consolidated Asset Recovery Sys.*, 2019 WL 351339, at *2 n.1 (D. Minn. Jan. 29, 2019) ("In conformity with other recent decisions in this District, the undersigned concludes that Rule 15 and not Minn. Stat. § 549.191

controls the adjudication of motions to amend."); *In re McNeilus Mfg. Explosion Coordinated Litig.*, No. 17-CV-5237-PJS-KMM, 2019 WL 2387110, at *2 n.2 (D. Minn. June 6, 2019); *Williams v. Rodenburg LLP*, No. 17-CV-4962 (SRN/HB), 2018 WL 5801889, at *4 (D. Minn. Nov. 6, 2018) ("In a recent decision—and in conformity with other recent decisions in this District—the undersigned determined that Rule 15 and not Minnesota Statutes § 549.191 controls the adjudication of motions to amend."); *Shank v. Carleton College*, 16-CV-1154 (PJS/HB), 2018 WL 4961472, at *4 (D. Minn. Oct. 15, 2018), *aff'd*, 329 F.R.D. 610 (D. Minn. 2019); *In re Bair* Hugger, 2017 WL 5187832 at *4; *but see*, *Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, No. 15-CV-3183 (ADM/LIB), 2018 WL 9919941, at *2 (D. Minn. Mar. 8, 2018), *objections overruled*, 351 F. Supp. 3d 1187 (D. Minn. 2018) (finding the court is required to apply Minn. Stat. § 549.191 because Rule 15 and § 549.191 do not conflict).

"*Shady Grove* instructs that '[a] federal court exercising diversity jurisdiction should not apply a state law or rule if (1) a Federal Rule of Civil Procedure 'answer[s] the same question' as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act.'" *Selective Ins. Co. of S.C. v. Sela*, 353 F. Supp. 3d 847, 856 (D. Minn. 2018) (quoting *Abbas v. Foreign Policy Grp., LLC,* 783 F.3d 1328, 1333 (D.C. Cir. 2015), quoting *Shady Grove*, 559 U.S. at 398-99)); *see also Ramirez v. AMPS Staffing, Inc.*, No. CV 17-5107 (DWF/BRT), 2018 WL 1990031, at *4 (D. Minn. Apr. 27, 2018). Five of the Supreme Court justices in *Shady Grove* concluded that the first step in the analysis looks to whether the federal rule directly conflicts with the state law, which occurs where the federal rule "answers the question in dispute." *Shady Grove*, 559 U.S.

at 398-99, 421.  If it does, Rule 15 applies—Minn. Stat. § 549.191 notwithstanding—

"unless it exceeds statutory authorization or Congress's rulemaking power."  *Id.*

In *Shady Grove*, the Supreme Court examined the applicability in a diversity

action of N.Y. Civ. Prac. Law § 901(b), which precluded a suit to recover a "penalty"

from proceeding as a class action, versus Rule 23 of the Federal Rules of Civil Procedure,

which allows all class action cases to be maintained as long as the requirements of Rule

23 are met.  559 U.S. at 398-99.  The Court concluded that "Rule 23 provides a one-size-

fits-all formula for deciding the class-action question.  Because § 901(b) attempts to

answer the same question—i.e., it states that Shady Grove's suit 'may *not* be maintained

as a class action' (emphasis added by Supreme Court) because of the relief it seeks—it

cannot apply in diversity suits unless Rule 23 is ultra vires."  *Id.* at 399.

Here, Rule 15 provides a "one-size-fits-all-formula" for amendments.  Rule 15

does not set forth an evidentiary requirement.  Instead, as set forth above, the focus as to

the viability of the proposed amendment under Rule 15 with respect to **all** claims and

requests for relief focuses on futility; that is, whether an amended complaint alleges

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face under Rule 8 (in conjunction with the particularity requirements of Rule 9 with

respect to allegations of fraud), so as to withstand a motion to dismiss under Rule

12(b)(6).  *See*, *infra*, Section III.  On the other hand, a motion to amend to add punitive

damages under § 549.191 requires in part "one or more affidavits showing the factual

basis for the claim" outside of the proposed amended pleading and only allows the

amendment if "the Court finds prima facie evidence in the support of the motion . . . ."

Minn. Stat. § 549.191.  Because Minn. Stat. § 549.191 attempts to answer the same

question as Rule 15 regarding when an amendment should be permitted, § 549.191

cannot apply in diversity actions unless Rule 15 violates the Enabling Act.

The Enabling Act provides that the Federal Rules of Civil Procedure "shall not

abridge, enlarge or modify any substantive right.  All laws in conflict with such rules

shall be of no further force or effect after such rules have taken effect."  28 U.S.C. §

2072(b).  In *Shady Grove*, Justice Scalia, writing for the plurality, held:

> In sum, it is not the substantive or procedural nature or purpose of the
> affected state law that matters, but the substantive or procedural nature of the
> Federal Rule.  We have held since *Sibbach*, and reaffirmed repeatedly, that
> the validity of a Federal Rule depends entirely upon whether it regulates
> procedure.  If it does, it is authorized by § 2072 and is valid in all
> jurisdictions, with respect to all claims, regardless of its incidental effect
> upon state-created rights.

559 U.S. at 410 (internal citations omitted).[1]  Although Justice Stevens joined the four

other Justices in the plurality with respect to the first step in the analysis of *Shady Grove*

as part of his concurrence, he differed with the plurality with respect to when a Federal

Rule violates the Enabling Act:

> A federal rule . . . cannot govern a particular case in which the rule would
> displace a state law that is procedural in the ordinary course of the term but
> is so intertwined with a state right or remedy **that it functions to define the
> scope of the state-created right**.

---

[1]     The plurality relied on the Supreme Court's previous decision in *Sibbach v. Wilson & Co.*, 312 U.S. 1 (1941), where the Supreme Court addressed the validity of Rule 35, given conflicting state law.  *Id.* at 13.  The Supreme Court in *Sibbach* held that the ultimate "test must be whether a rule really regulates procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them."  *Id.* at 14.  The Supreme Court then found that Rule 35 was a rule of procedure and therefore binding in all federal district courts.  *Id.* at 13-14.

559 U.S. at 423 (Stevens, J. concurring in part and concurring in judgment) (emphasis added). That said, even Justice Stevens acknowledged that "the bar for finding an Enabling Act problem is a high one." *Id.* at 432.

This Court concludes the plurality holding in *Shady Grove* regarding the Enabling Act is more inline with the Supreme Court's previous holding in *Sibbach* that the analysis must be focused on whether a Federal Rule really regulates procedure. *See Sibbach*, 312 U.S. at 14; *see also Selective Ins.*, 353 F. Supp. 3d at 863 (quoting *Abbas*, 783 F.3d at 1333) ("The *Sibbach* approach essentially mirrors the approach of Justice Scalia. 'Under *Sibbach*, any federal rule that "really regulates procedure" is valid under the Rules Enabling Act. As the Supreme Court indicated in *Shady Grove* (in a portion of the opinion that spoke for a majority), pleading standards and rules governing motions for summary judgment are procedural.'") (citation omitted). Here, both Rules 8 and 9 govern the pleading standard and content of a complaint and Rule 15 governs when a pleading, such as a complaint, can be amended within the confines of Rules 8 and 9. *See Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013) ("We apply federal pleading standards—Rules 8 and 12(b)(6)—to state the substantive law to determine if a complaint makes out a claim under state law."). As such, the Court finds that Rules 8, 9, and 15 regulate procedure under the both the plurality holding in *Shady Grove* and the holding in *Sibbach*. *See Selective Ins.*, 353 F. Supp. 3d at 860; *In re Bair Hugger*, 2017 WL 5187832, at *4 ("Rule 15, similar to Rule 23 as discussed in *Shady Grove*, both 'really regulates procedure . . . .'").

The Court recognizes that there is a split of opinion regarding whether Justice Stevens' opinion supplies the controlling test.  *See Selective Ins.*, 353 F. Supp. 3d at 860-62 (citing *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1164 (10th Cir. 2017), citing *Marks v. United States*, 430 U.S. 188 (1977)).  Even assuming that Justice Stevens' test controls, the Court concludes that the application of Rules 8, 9, and 15 to Plaintiffs' motion for leave to amend does not violate the Enabling Act.  In his concurrence, Justice Stevens (in concluding that Rule 23 did not violate the Enabling Act) looked to a number of factors, including whether the conflicting state law "is designed as a procedural rule", thereby suggesting that "it reflects a judgment about how state courts ought to operate and not a judgment about the scope of state-created rights and remedies."  *Shady Grove*, 559 U.S. at 432.

Here, the fact that the Minnesota procedural law setting forth how to bring a motion to amend to add punitive damages, § 549.191, is separate from the actual scope of a substantive claim for punitive damages (set forth in Minn. Stat. § 549.20), supports a finding that the substantive right and the procedural requirements are not so intertwined that the procedural requirements are a "judgment about the scope of state-created rights and remedies."  *See also In re Bair Hugger*, 2017 WL 5187832, at *4 ("Just as with the New York statute under review in *Shady Grove*, the procedural pleading statute for punitive damages is, under Stevens' framework, not a 'judgment about the scope of state-created rights and remedies,' 559 U.S. at 432 (Stevens, J., concurring), but a judgment about how Minnesota courts should operate.  *See* Minn. Stat. § 549.191."); *Rogers v. Mentor Corp.*, No. 12-CV-2602 (SRN/SER), 2018 WL 2215519, at *8 (D. Minn. May

15, 2018), *aff'd sub nom. Urbieta v. Mentor Corp.*, No. CV 13-1927 ADM/LIB, 2018

WL 3475484 (D. Minn. July 19, 2018)) ("The Minnesota legislature made a conscious

decision to separate the procedural requirement from the substantive standard of proof.

*Compare* Minn. Stat. § 549.191, *with id.* § 549.20.  This decision underscores that the

evaluation to amend a pleading to add a punitive damages claim is different from the

evaluation to allow an award of punitive damages.  Courts in this District routinely

highlight this distinction."); *c.f.*, *Selective Ins.*, 353 F. Supp. 3d at 861-62 (examining

Minn. Stat. § 604.18).  There is nothing within § 549.191, outside of referencing §

549.20, that defines the substantive dimension of the punitive damages claim itself under

Minnesota law.  *See Shady Grove*, 559 U.S. at 433-34 (citation omitted) (Stevens, J.,

concurring).[2]  Section 549.20 governs the scope of punitive damages, and not only will

Plaintiffs need to plausibly allege a claim for punitive damages that meets the substantive

requirements of that statute, they will also still need to prove at trial their entitlement to

punitive damages by clear and convincing evidence, regardless of the application of Rule

---

[2]    In finding that Rule 23 was valid under the Enabling Act, Justice Stevens also
found it significant that the New York law, limiting class certification, would apply to
claims from other states brought within New York federal district courts.  *See Shady
Grove*, 559 U.S. at 432 (Stevens, J., concurring).  Based on this, Justice Stevens
concluded that it was "therefore hard to see how § 901(b) could be understood as a rule
that, though procedural in form, serves the function of defining New York's rights or
remedies."  *Id.*  The Court notes that other courts within this District have signaled that
Minn. Stat. § 549.191 could apply to other states' claims for punitive damages that are
brought within this District.  *See*, *e.g.*, *Healey v. I-Flow, LLC*, 853 F. Supp. 2d 868, 872
(D. Minn. 2012); *see also Rogers*, 2018 WL 2215519, at *8.  "This distinction further
highlights that the substantive statute, not the punitive damages pleading statute,
'define[s] the scope of the state-created right.'"  *Rogers*, 2018 WL 2215519, at *8
(quoting *Shady Grove*, 559 U.S. at 423).

15 in deciding their motion to amend.[3]  In other words, the application of Rule 15 instead of § 549.191 satisfies Justice Stevens' test as it will not "abridge, enlarge or modify any ultimate state substantive right."  *See Shady Grove*, 559 U.S. at 417-18, 431; *see also Rodenburg*, 2018 WL 5801889, at *4 (citing Minn. Stat. § 549.20, subd. 1(b)) (citation omitted) ("This substantive standard necessarily informs the Court's consideration of whether Plaintiff's SPAC has alleged a plausible claim for punitive damages.").

Accordingly, the Court will apply the Rule 15 standard in determining whether to grant Plaintiffs' motion to amend to add a claim for punitive damages based on the allegations in the proposed second amended complaint.

## III.   ANALYSIS

With respect to Rule 15, Defendants argue that the Motion should be denied because it is futile.  (*See* Dkt. 53.)  Plaintiffs' amendment is not futile if the proposed second amended complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Hillesheim*, 897 F.3d at 955 (quoting *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d at 1063).  Here, the question is

---

[3]     The Court notes that Justice Stevens in his analysis also looked to the legislative history to determine whether N.Y. Civ. Prac. Law § 901(b) was a state procedural rule adopted for some policy reason or a seemingly procedural rule that was intimately bound up in the scope of a substantive right or remedy.  *See Shady Grove*, 559 U.S. at 433 (citation omitted) (Stevens, J., concurring).  Here, the legislative history is that it was § 549.20, as opposed to § 549.191, that defines the scope of punitive damages given that § 549.20 was enacted in response to concerns regarding the increases in the frequency and amount of punitive damages awards.  *See Minnesota-Iowa Television Co. v. Watonwan T.V. Imp. Ass'n*, 294 N.W.2d 297, 310-11 (Minn. 1980) ("Section 549.20 was enacted in 1978 in response to concerns which a variety of constituents expressed to the legislature about the awarding of punitive damages in products liability cases.").

whether the proposed second amended complaint plausibly alleges facts showing that the

acts of Defendants show deliberate disregard for the rights or safety of others where:

> A defendant has acted with deliberate disregard for the rights or safety of
> others if the defendant has knowledge of facts or intentionally disregards
> facts that create a high probability of injury to the rights or safety of others
> and:
>
>> (1) deliberately proceeds to act in conscious or intentional
>> disregard of the high degree of probability of injury to the
>> rights or safety of others; or
>>
>> (2) deliberately proceeds to act with indifference to the high
>> probability of injury to the rights or safety of others.

Minn. Stat. § 549.20, subd. 1(b).

Under the criteria set forth under § 549.20, "[a] defendant operates with

'deliberate disregard' by acting with intent or indifference to threaten the rights or safety

of others." *Gamma-10 Plastics, Inc. v. Am. President Lines, Ltd.*, 32 F.3d 1244, 1255

(8th Cir. 1994). As such, "[t]he mere existence of negligence or of gross negligence does

not rise to the level required so as to warrant a claim for punitive damages."[4] *Ulrich*, 848

F. Supp. at 868 (citations omitted); *see also Shank*, 2018 WL 4961472, at *7 (same);

*Berczyk v. Emerson Tool Co.*, 291 F. Supp. 2d 1004, 1008 (D. Minn. 2003) ("A mere

showing of negligence is not sufficient to sustain a claim of punitive damages.") (cleaned

up). Moreover, Plaintiffs must allege that Defendants were aware of a high probability

---

[4] "Minnesota law defines gross negligence as 'without even scant care but not with such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong.'" *Greer v. Walsh Constr. Co.*, No. CV 15-465 (PAM/JSM), 2016 WL 6892109, at *8 (D. Minn. Feb. 23, 2016) (quoting *State v. Chambers*, 589 N.W.2d 466, 478 (Minn. 1999)).

that their conduct would cause injury to Plaintiffs.  *See In re McNeilus Mfg.*, 2019 WL 2387110, at *4.  Put another way, the Court looks to whether the allegations in the proposed second amended complaint plausibly allege that Defendants knew of facts, or intentionally disregarded facts, that created a high probability that Defendants' actions would harm the rights or safety of Plaintiffs.

Defendants argue that the proposed second amended complaint lacks allegations of Defendants' "knowledge of facts" that create a high probability of injury to the rights or safety of others.  This includes allegations in the proposed second amended complaint that: "Defendants knew ILKB's founder, Michael Parrella, had filed for bankruptcy in 2003; that his discharge from bankruptcy had been vacated in 2008 for failure to pay federal taxes; and that adversary proceedings in the bankruptcy accused Parrella of fraud and fraudulent transfers."  According to Defendants, nothing in the proposed second amended complaint plausibly suggests that withholding this information created a high probability that Plaintiffs' rights would be harmed as it relates to purchasing an ILKB franchise.  This Court agrees.  It is hard to understand how an omission of a bankruptcy in 2003, a failure to pay taxes discovered in 2008, and accusation of an unexplained fraud (without any indication as to the outcome), necessarily created a high probability of injury to the rights or safety of Plaintiffs in relation to purchasing an ILKB franchise almost 10 years later.  In other words, even assuming that Defendants knowingly omitted these facts from Plaintiffs, the Court finds that these allegations do not plausibly allege that Defendants were aware, based on these facts, that there was the high probability that purchasing an ILKB franchise would harm Plaintiffs.

16

The Court also agrees with Defendants that allegations in the proposed second amended complaint regarding representations made by Defendants to Plaintiffs offering to match them "only with franchises that Defendants had investigated" and then not conducting "any serious, systematic or professional due diligence upon ILKB" or taking ILKB's representations at face value at most amounts to gross negligence on the part of Defendants as to their duty to Plaintiffs.  However, the mere showing of negligence, even gross negligence, is not sufficient to sustain a claim of punitive damages.  *See Ulrich*, 848 F. Supp. at 868.  Moreover, there are no allegations, save for the alleged illegal marketing (addressed below), that would have given Defendants reason not to believe ILKB's representations so as to create a high probability of harm to Plaintiffs.

The Court acknowledges that Plaintiffs allege Defendants knew that ILKB engaged in blatantly illegal marketing techniques as early as March 2015 and never questioned whether such techniques had ceased, thus exposing Plaintiffs to the high likelihood, if not certainty, that Plaintiffs would be the victims of fraud.  (Dkt. 42-2 ¶ 42.)  To comply with Rule 8, a claimant "must 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  *Gardner v. First Amer. Title Ins. Co.*, 294 F.3d 991, 994 (8th Cir. 2002) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).  As pointed out by Defendants, the allegations regarding illegal marketing are conclusory, as Plaintiffs do not identify in the proposed second amended complaint the marketing techniques communicated to or used by Plaintiffs.  These conclusory allegations do not give Defendants adequate notice of the claim for the purposes of Rule 8 and therefore, it is futile with respect to those allegations for the

purposes of the punitive damages claim.  Similarly, the proposed second amended complaint alleges that Defendants disregarded complaints and warning signs from ILKB franchisees as the whining of "stupid, selfish and ungrateful franchisees" instead of investigating such complaints and determining whether they were true.  (Dkt. 42-2 ¶ 42.) These allegations do not provide adequate notice of a claim for punitive damages because they do not set forth what those complaints entailed and how they bore on the Defendants' alleged misconduct with respect to Plaintiffs so as to find that Defendants' disregard created a high probability of harm to Plaintiffs.

However, Plaintiffs do allege that Defendants made specific representations about ILKB without investigating or verifying them, when such representations were false and were known or should have been known to Defendants as false.  (*Id.*)  The specific representations Plaintiffs appear to be referencing pertain to Defendant Fanning's representations to Giacopelli, including that: ILKB franchises took three to six months to become profitable; ILKB owners made a profit of $4,000 to $15,000 a month; franchisees required a total investment of $120,000 to $309,000 to begin the operations of a single iLoveKickboxing.com outlet; ILKB was suitable for semi-absentee ownership; a franchise owner could expect to start making money within three to six months, thereby generating $4,000 to $15,000 a month in net profit, for $100,000 a year or more of "mailbox money"; if Giacopelli purchased several territories he could increase his profits by first opening two franchises and then using the profits from those to open an additional three franchises; ILKB franchises took three to six months to break even and become profitable; ILKB was suitable for absentee ownership; and ILKB had an

impressive marketing strategy and a lot of resources to ensure each outlet's success.  (*Id.* ¶ 16.)  These alleged misrepresentations were made to induce Plaintiffs into purchasing an ILKB franchise.  (*Id.* ¶¶ 16, 31.)  As a starting point, the Court rejects any argument by Defendants that these allegations fail to state a claim for punitive damages merely because Plaintiffs allege in part that Defendants should have known that their representations regarding ILKB were false.  Defendants contend that such allegations, if proven true, at most demonstrate negligence, as opposed to willful or willfully indifferent conduct, which is required for punitive damages.  However, this argument ignores the alternative allegation that Defendants "knew" the representations were false.  Rule 8 expressly authorizes pleading in the alternative.  *See* Fed. R. Civ. 8(d)(2) ("If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

Defendants do not argue that punitive damages are not available in cases involving fraud.  Indeed, courts have concluded that such damages are appropriate in the context of fraud.  *See, e.g., Hanks v. Hubbard Broadcasting*, 493 N.W.2d 302, 311 (Minn. Ct. App. 1992) (punitive damages are available in fraud actions), *pet. for rev. denied* (Minn. Feb. 12, 1993); *see also Stoering v. O'Grady*, No. C6-93-2464, 1994 WL 273431, at *2 (Minn. Ct. App. June 21, 1994) (same); *Sullivan v. Ouimet*, 377 N.W.2d 24, 27 (Minn. Ct. App. 1985) (same).  In this case, allegations regarding representations whether the ILKB franchise business was suitable for absentee ownership; the breakeven point of franchises; the profitability of ILKB franchises; the total investment required to begin the operations of single outlet; and if Giacopelli purchased several territories he could increase his profits by first opening two franchises and then using the profits from those

to open an additional three franchises, all go to the financial viability of an ILKB franchise. Assuming as true the allegations that Defendants made these representations to Plaintiffs, and the allegations that Defendants knew these representations were false when they made them to Plaintiffs, when construed in the light most favorable to Plaintiffs, set forth a plausible claim that Defendants consciously or with indifference provided Plaintiffs with inaccurate information about ILKB in order to entice them into investing in an ILKB franchise thereby creating a high probability that Defendants' actions would harm Plaintiffs' rights with respect to their franchise purchases.

In sum, Plaintiffs' Motion is granted **only** to the extent that it seeks to add a claim for punitive damages in relation to the specifically alleged fraudulent representations made by Defendants to Plaintiffs that: (1) ILKB franchises took three to six months to become profitable; (2) ILKB owners made a profit of $4,000 to $15,000 a month; (3) franchisees required a total investment of $120,000 to $309,000 to begin the operations of a single iLoveKickboxing.com outlet; (4) ILKB was suitable for semi-absentee ownership; (5) a franchise owner could expect to start making money within three to six months, thereby generating $4,000 to $15,000 a month in net profit, for $100,000 a year or more of "mailbox money"; (6) if Giacopelli purchased several territories he could increase his profits by first opening two franchises and then using the profits from those to open an additional three franchises; (7) ILKB franchises took three to six months to break even and become profitable; and (8) ILKB was suitable for absentee ownership. The Motion is otherwise denied. The Court reminds Plaintiffs that this analysis was conducted under the liberal pleading standard of Rule 15, and the fact of the Court

granting them leave to amend does not imply that they are likely to succeed with their claim for punitive damages.

## IV.   ORDER

Based on the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1.      Plaintiffs' Motion to Amend Complaint (Dkt. 40) is **GRANTED** in part and **DENIED** in part.

2.      Plaintiffs shall file their Second Amended Complaint, consistent with this Order, on **May 22, 2020**, unless an appeal of this Order is sought.  The Second Amended Complaint shall only include the following portions of paragraph 44 of the proposed second amended complaint (Dkt. 42-2):

Defendants deliberately and intentionally disregarded the rights of Plaintiffs and disregarded the substantial likelihood of serious injury and damages to Plaintiffs by representing that they offered to match Plaintiffs only with franchises that Defendants had investigated and vetted; that such franchises were of high quality; and that Defendants would provide Plaintiffs with all knowledge necessary to make an informed decisions [sic], when, in fact:

-   Defendants made specific representations as set forth above about ILKB without investigating or verifying them, when such representations were false and were known or should have been known to Defendants as false.

As a result of Defendants' deliberate disregard of Plaintiffs' rights, Plaintiffs are entitled to punitive damages.

3.     Defendants shall respond to the Second Amended Complaint in a manner consistent with the Federal Rules of Civil Procedure.


DATED: May 6, 2020                    *s/Elizabeth Cowan Wright*
                                      ELIZABETH COWAN WRIGHT
                                      United States Magistrate Judge